UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL L. BALES, | * | CIV 13-4021-RAL |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | OPINION AND ORDER |
| | * | GRANTING MOTION |
| CAROLYN W. COLVIN, | * | FOR ATTORNEY'S FEES |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant. | * | |

Plaintiff Michael Bales filed a motion for attorney's fees, Doc. 24, under the Equal Access to Justice Act (EAJA) following this Court's opinion and order reversing and remanding the decision of the Commissioner of Social Security (Commissioner) to deny Bales's application for Social Security Disability Insurance (SSDI) benefits, Doc. 22. Bales seeks $6,598.77 in attorney's fees, including $373.52 in sales tax and $18.33 in costs. The Commissioner opposed Bales's motion for attorney's fees, arguing that her position was substantially justified and that if this Court does award fees, it should not award them directly to Bales's attorney. Doc. 26. Bales then filed a supplemental motion for award of attorney's fees, Doc. 28, seeking an additional $529.47 in attorney's fees and applicable sales tax for work related to Bales's reply brief. This case presents a close call on whether the Commissioner's position in this matter was or was not substantially justified. Considering the case and the Commissioner's arguments as a whole, this Court concludes that the Commissioner's position was not substantially justified and thus grants Bales's motions.

## I. Facts Pertinent to Motion

This case demonstrates why it can be problematic for a reviewing physician and an Administrative Law Judge (ALJ) to rely on secondary reports of a functional capacity evaluation (FCE) instead of actually seeing the report of the FCE. The issues relevant to Bales's motions

arise out of an FCE conducted by physical therapist (PT) Nano Johnson on Bales in January 2008. AR 519–22. In a letter to Dr. Jerry Blow, a physiatrist whom Bales had seen on several occasions for a back injury, PT Johnson stated that the FCE indicated that Bales was "able to work at the LIGHT Physical Demand Level for an 8-hour day according to the Dictionary of Occupational Titles, U.S. Department of Labor, 1991." AR 519. The FCE form as completed by PT Johnson indicated, among other things, that Bales could not lift, carry, or push or pull any weight frequently. AR 521. Dr. Blow's notes from his next appointment with Bales stated that the FCE showed Bales to be capable of work in a "light duty capacity." AR 328. Dr. Blow did not explain what he meant by "light duty." AR 328–330.

In June 2009, Bales filed an application for SSDI benefits under Title II of the Social Security Act alleging disability since January 20, 2008, due to degenerative disc disease, depression, memory and concentration problems, and post-laminectomy syndrome. AR 17, 182, 210. In connection with Bales's application, Dr. Frederick Entwistle and Dr. Kevin Whittle, both of whom were non-examining state-agency physicians, reviewed portions of Bales's medical records but not PT Johnson's FCE report. Dr. Entwistle completed a residual functional capacity (RFC) assessment form on Bales in November 2009, finding that Bales could lift twenty pounds occasionally and ten pounds frequently[1] and could stand and/or walk with normal breaks for about six hours or sit for approximately six hours in an eight-hour workday. AR 445–52. In support of his conclusions, Dr. Entwistle cited, among other things, Dr. Blow's statement that the FCE revealed that Bales could work in a light duty capacity. AR 446–47. Dr. Whittle in his review of Dr. Entwistle's assessment stated that the FCE indicated that Bales had the capacity

---

[1]Again, the actual FCE by PT Johnson indicated that Bales could not lift, carry, or push or pull any weight frequently. AR 521.

2

for light work and concluded that a light RFC with some postural limitations was appropriate. AR 465.

The Social Security Administration denied Bales's application initially in November 2009 and again upon reconsideration in April 2010. AR 17, 69, 72, 76. In late April 2010, Bales requested a hearing before an ALJ. AR 78. The ALJ conducted a hearing, AR 37, and issued a decision in November of 2011 finding that Bales was not disabled and thus was not entitled to benefits, AR 17–30. The ALJ calculated Bales's RFC as allowing for light work, as defined in 20 C.F.R. § 404.1567(b), with certain limitations. AR 22–28. As relevant here, the ALJ found that Bales could perform light work including occasionally lifting up to twenty pounds and frequently lifting ten pounds or less. AR 22. The ALJ, when formulating Bales's RFC, stated that he gave great weight to Dr. Entwistle's assessment of Bales and to the FCE. AR 25, 27. When the ALJ issued his opinion, however, neither the FCE nor the attached letter from PT Johnson to Dr. Blow were part of the administrative record. AR 5.

Bales requested that the Appeals Council review the ALJ's decision and submitted new evidence, including the FCE. AR 5. Bales's attorney explained to the Appeals Council that the actual results of the FCE indicated that Bales was not able to perform "light work" as defined in 20 C.F.R. § 404.1567(b). AR 289. Specifically, § 404.1567(b) states that light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," while the FCE indicated that Bales could not lift, carry, or push or pull *any* weight on a frequent basis. AR 289, 521. The Appeals Council considered the new evidence but denied Bales's request for review. AR 1–6.

Bales then appealed the Commissioner's decision to this Court, arguing first that the ALJ's RFC determination was not supported by substantial evidence because, among other reasons, the FCE actually conflicted with the ALJ's RFC determination, and second that the

3

ALJ's decision to give Bales's treating doctor's opinion little weight was erroneous. Given that the FCE, which the ALJ, Dr. Entwistle, and Dr. Whittle all relied on to a significant extent, undermines their conclusions that Bales could perform light work as defined in 20 C.F.R. § 404.1567(b), this Court found that the ALJ's RFC determination was not supported by substantial evidence and remanded the case to the ALJ. Doc. 22.

## II. Substantially Justified

Under the EAJA, the prevailing party in a proceeding for judicial review of federal agency action is entitled to legal fees and costs "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); see also Goad v. Barnhart, 398 F.3d 1021, 1025 (8th Cir. 2005). Here, Bales is a prevailing party because he obtained a sentence-four remand under 42 U.S.C. § 405(g), Shalala v. Schaefer, 509 U.S. 292, 302 (1993), and the Commissioner does not argue that special circumstances make an award unjust. Thus, the issue before this Court is whether the Commissioner's position was substantially justified.

"Substantially justified" in this context means "'justified to a degree that could satisfy a reasonable person' or having a 'reasonable basis in law and fact.'" Koss v. Sullivan, 982 F.2d 1226, 1229 (8th Cir. 1993) (quoting Pierce v. Underwood, 487 U.S. 552, 565, 566 n.2 (1988)). The standard is whether the Commissioner's position is "clearly reasonable, well founded in law *and fact*, solid though not necessarily correct." Lauer v. Barnhart, 321 F.3d 762, 764 (8th Cir. 2003) (quoting Friends of Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 885 (8th Cir. 1995)); see also Goad, 398 F.3d at 1025 ("A position enjoys substantial justification if it has a clearly reasonable basis in law and fact."). Thus, the Commissioner's position in "denying benefits can be substantially justified even if the denial is unsupported by substantial evidence on the record as a whole." Welter v. Sullivan, 941 F.2d 674, 676 (8th Cir. 1991); see also Goad,

4

398 F.3d at 1025 ("[A] loss on the merits by the Commissioner does not give rise to a presumption that she lacked substantial justification for her position."). "The Commissioner bears the burden of proving that both [her] pre-litigation conduct, including the ALJ's decision itself, and [her] litigation position were substantially justified." Stewart v. Astrue, 561 F.3d 679, 683 (7th Cir. 2009) (per curiam); see also Gowen v. Bowen, 855 F.2d 613, 615 (8th Cir. 1988) ("The Secretary bears the burden of proving that its position was substantially justified at both the administrative and litigation levels.").

As the Commissioner now acknowledges, her initial position to this Court on the FCE was that the ALJ gave great weight to Dr. Blow's opinion and "did not purport to rely on the functional capacities evaluation completed by a physical therapist." Doc. 26 at 3; see also Doc. 18 at 6. This position is contrary to the plain language of the ALJ's opinion and has no basis in fact. The ALJ in his opinion discussed what he believed was the result of the FCE in detail and stated that the "results of this evaluation were given great weight by the undersigned." AR 25. The ALJ simply did not have the actual FCE report in the record, and the result was different than what the ALJ had inferred from secondary reports about the FCE.

Rather than offer any additional justification for her initial position to this Court on the FCE, the Commissioner contends that this Court's rejection of some of Bales's other arguments supports a finding that the Commissioner's position as a whole was substantially justified. Courts vary in how they characterize the "position" of the government under the EAJA, with some focusing on the issue that led to remand and others taking a more holistic view of the government's case. Compare Tobeler v. Colvin, 749 F.3d 830, 834 (9th Cir. 2014) (explaining that Ninth Circuit precedent requires an award of "fees when 'the Secretary's position *on the . . . issues that led to remand* was not substantially justified'" (alteration in original) (quoting Flores v. Shalala, 49 F.3d 562, 564 (9th Cir. 1995))), and Air Transp. Ass'n of Can. v. FAA, 156

5

F.3d 1329, 1332 (D.C. Cir. 1998) ("[I]t cannot be the case that Congress intended that a party who prevails on an essential ground of a petition to set aside government action cannot recover the congressionally contemplated fees because the government's action was substantially unjustified on only one of several possible bases."), with Meyer v. Colvin, 754 F.3d 251, 255 (4th Cir. 2014) ("[In] determining whether the [G]overnment's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of the circumstances, whether the [G]overnment acted reasonably in causing the litigation or in taking a [particular] stance during the litigation." (alterations in original) (quoting Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993))), and Stewart, 561 F.3d at 683 ("It is true that EAJA fees are not determined by the number of successful arguments, but a party's success on a single claim will rarely be dispositive of whether the government's overall position was substantially justified."). Although it is not entirely clear, it appears that the United States Court of Appeals for the Eighth Circuit takes a holistic approach when determining whether the government's position is substantially justified. See United States v. Hurt, 676 F.3d 649, 652 (8th Cir. 2012) ("The EAJA 'favors treating a case as an inclusive whole, rather than as atomized line-items.' In determining whether the government's position is 'substantially justified,' the district court should make 'only one threshold determination for the entire civil action.'") (quoting Comm'r, INS v. Jean, 496 U.S. 154, 161–62 (1990))). But see Sierra Club Northstar Chapter v. Kimbell, 640 F. Supp. 2d 1082, 1086–87 (D. Minn. 2009) (stating that as of 2009, "whether the substantially justified inquiry should be conducted on an issue-by-issue basis or by taking a more holistic view of the government's position in bringing about or continuing the litigation is, at least in this circuit, open to debate"). Yet even those courts that take a holistic approach will award attorney's fees when the government takes a substantially unjustified position on a significant issue that affects the entirety of the case. See Hackett v.

6

Barnhart, 475 F.3d 1166, 1173 n.1 (10th Cir. 2007) (acknowledging that Jean, 496 U.S. 154, requires courts to treat the government's case as an "inclusive whole," but finding that the Commissioner's position was not substantially justified despite the Commissioner prevailing on five out of six issues before district court, where plaintiff obtained remand based on single discrete issue that resulted in an unreasonable denial of benefits, other issues were unrelated to that issue, and other issues did not provide a basis to affirm ALJ's decision); Roanoke River Basin, 991 F.2d at 139 ("[A] more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's 'position' in the entire case as unreasonable, whereas a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not.").

The Eighth Circuit once described the RFC determination as "[p]robably the most important issue" in a Social Security case. McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), abrogated on other grounds by Forney v. Apfel, 524 U.S. 266 (1998). Here, the FCE played a critical role in the ALJ's RFC determination, which in turn was a pivotal issue in Bales's case. The only two pieces of evidence to which the ALJ assigned great weight when determining the physical portion of Bales's RFC were the FCE and Dr. Entwistle's assessment, which itself relied on Dr. Blow's characterization of the FCE. Once the FCE became part of the record, two things became clear. First, the FCE undermined the ALJ's conclusion that Bales could perform "light work" as defined in 20 C.F.R. § 404.1567(b). Second, the FCE called into question Dr. Entwistle's assessment because it was impossible to know whether Dr. Entwistle would have reached the same conclusion had he known that the actual FCE differed from the secondary report of the FCE on which he relied. Rather than acknowledging that the RFC formulation was based on Dr. Entwistle and in turn the ALJ believing the FCE to be different than it actually was, and rather than acknowledging how that weakened the ALJ's opinion, the

7

Commissioner chose to argue initially to this Court that the FCE was inconsequential, despite language in the ALJ's opinion relying on what he had understood the FCE to be. Under these circumstances, the Commissioner's position was not substantially justified, even though this Court ruled against Bales on another issue and stopped short of finding Bales entitled to benefits.

### III. Award of Fees Directly to Bales's Attorney

The Commissioner does not object to the amount of the fee request[2] but asks that it be paid to Bales rather than his attorney. Bales entered into a representation agreement assigning any court-awarded EAJA fees to his attorney. Docs. 24-4, 24-5. Despite this agreement, the Commissioner argues that Astrue v. Ratliff, 560 U.S. 586 (2010) precludes an award of fees and expenses directly to Bales's attorney. The Supreme Court of the United States in Ratliff held that an EAJA award is payable to the claimant rather than an attorney and thus is subject to an offset for any pre-existing federal debt the claimant owes. Id. at 591–93. Ratliff, however, did not address the issue of assignment of fees. This Court in Johnson v. Astrue, No. CIV 10-4052-RAL, 2011 WL 4458850 (D.S.D. Sept. 23, 2011), rejected the same argument the Commissioner makes now and held that when a claimant owes no federal debt and has assigned payment of any EAJA fees to counsel, the payment may be directed to the attorney. Id. at *10. As this Court explained, honoring a claimant's assignment of an EAJA fee is consistent with Ratliff because doing so recognizes that the award belongs to the claimant. Id.

The Commissioner also asserts that the Anti-Assignment Act, which generally prohibits the assignment of claims against the United States, voids Bales's assignment of EAJA fees to his attorney. See 31 U.S.C. § 3727(b). The district court in McGrath v. Astrue, No. 10-4192 (ADM/SER), 2012 WL 4898276 (D. Minn. Oct. 1, 2012), rejected this argument, concluding that

---

[2]This Court independently reviewed the hourly rate and the amount of time billed by Bales's attorney and finds them appropriate under 28 U.S.C. § 2412(d)(2)(A) and related provisions given the nature of the underlying case.

8

"[t]o read the AAA as prohibiting [EAJA] fee agreements [in Social Security cases] . . . is nonsensical when read alongside the law's stated intent." Id. at *7; see also Cooks v. Colvin, No. CIV. 12-4177-KES, 2013 WL 6729868, at *2 (D.S.D. Dec. 19, 2013) (adopting the reasoning in McGrath). This Court agrees with the reasoning in McGrath, and declines to adopt the Commissioner's interpretation of the Anti-Assignment Act.

### IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Bales's motion for attorney's fees and costs, Doc. 24, and Bales's supplemental motion for attorney's fees and costs, Doc. 28, are granted. It is further

ORDERED that Bales is entitled to fees in the amount of $7,128.24 (including sales tax) and $18.33 in costs. It is further

ORDERED that the Social Security Administration shall determine within 60 days whether Bales has outstanding federal government debt. If Bales has no federal government debt, then the full award shall be issued directly to Bales's counsel. If Bales has outstanding federal debt, then the amount of that debt shall be offset from the award and the difference shall be issued to Bales's counsel.

Dated October 22nd, 2014.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE